IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JOHN PATRICK HANRAHAN,**

      **Plaintiff,**

vs.                                                      **No. CIV 99-242 BB/LCS**

**PAT RUILOBA, et al.,**

      **Defendants.**

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

      **THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (*Doc. 44*), filed January 11, 2001. The Court having considered the submissions of the parties, relevant law, and being otherwise fully advised, finds that the motion to be not well taken, and recommends that it should be **denied.**

**I. Background**

      1.      The following statement of facts is set forth in the light most favorable to the Plaintiff, with all reasonable inferences from the record drawn in his favor. *See Clanton v. Cooper*, 129 F.3d 1147, 1150 (10th Cir.1997). The following facts were stipulated by the Plaintiff as true. On February 15, 1997, John Hanrahan (hereinafter "Hanrahan") was caught shoplifting by a security guard at a Smith's Food Store. Once Hanrahan was obtained by the security officer, he pointed a gun at the guard, fled from the store, got into a blue Cadillac and drove off. Officer Lance Fleming was dispatched to Smith's Food Store and spoke with the security guard who gave him a description of Hanrahan. The guard also told Officer Fleming that Hanrahan was armed, that he pointed the gun at

1

him, and that he fled in a Cadillac with license plate No. 338GHT. Officer Fleming relayed this information to APD dispatch.

2.	About an hour later, Officer Miller observed a blue Cadillac with license plate No. 338GHT fail to stop at a stop sign. Although Officer Miller attempted to stop the vehicle, Mr. Hanrahan tried to evade him. Officer Miller notified the APD dispatch of the situation. He was told about the Smith Food Store incident, and commenced his pursuit. Several other APD officers assisted in the pursuit including Officer Fleming, Officer Pacheco, Officer Duran, Officer Salcido, Officer Marquez, and Captain Leeper. Once in full pursuit, Hanrahan continued to flee and eventually hit Officer Salcido's vehicle.

3.	Hanrahan subsequently stopped at the intersection of Louisiana and Lomas NE, where traffic forced him to stop his vehicle. As Hanrahan tried to push through the vehicles in front of him, Officers Leeper and Miller both approached the driver's side of the car with their firearms drawn. After Officers Leeper and Miller drew their guns, they ordered Hanrahan out of the car.

4.	The remaining facts are in dispute by the Plaintiff. Hanrahan submits that he obeyed the officers' order and exited the car at once. However, the Defendants assert that Hanrahan did not exit the car until they broke the car window. Hanrahan contends that once Officers Leeper and Miller approached his vehicle at the intersection, he complied with their orders by getting out of the car and getting on his knees. He asserts that he did not try escape nor did he struggle with the officers. He submits that once he was placed in handcuffs and restraints, the officers commenced beating him. He also states within his response that when he and the officers arrived at the jail, the "jail officials would not accept the plaintiff because the beating was visually severe and they would not accept

responsibility. Officer Miller was directed by jail officials to transport the plaintiff to the hospital." (Pl. Brief at 3).

5. The Defendants contend that when they approached the Cadillac and drew their weapons, Hanrahan refused to exit the vehicle. When they realized he was not going to exit the car, Officer Leeper attempted to kick in one of the car windows. Hanrahan subsequently exited the vehicle and tried to run away. The Defendants also contend that when Hanrahan tried to escape, Officers Leeper and Miller grabbed onto his arms, placed him in an arm bar, and forced him to the ground where he was placed in handcuffs. After Hanrahan was placed in handcuffs, the Officers also used leg restraints on Hanrahan because he was kicking the officers as they were cuffing him.

6. On February 26, 1997, Hanrahan was indicted by a Grand Jury on multiple felony charges stemming from the February 15th incident. (Def. Brief Ex. I). Mr. Hanrahan pled "no contest" to the crimes of Aggravated Battery on a Police Officer, Aggravated Assault, and to ten counts of Armed Robbery. On March 4, 1999, Plaintiff filed this complaint alleging violations pursuant to 42 U.S.C. §1983. Hanrahan listed three claims in his complaint: (1) excessive force, (2) right to be free from unreasonable search and seizure, and (3) denial of due process of law. On February 22, 2000, the district court dismissed the Plaintiff's claims insofar that they were alleging violations of the Eighth Amendment. (*Doc. 33*). The Court also dismissed the Plaintiff's Eighth and Fourteenth Amendment due process claim. However, the court ordered that "Plaintiff's case proceed against all defendants as to the Fourth Amendment claims, and that the punitive damage claims proceed against the officers in their individual capacities." (*Doc. 33*). The Defendants subsequently filed a Motion for Summary Judgment Requesting Dismissal of Plaintiff's Fourth Amendment and Punitive Damage Claims.

## II. Standards

7.      Defendants have presented and supported their assertion of qualified immunity under the summary judgment standard of FED. RULE CIV. PRO. 56.  A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. RULE CIV. PRO. 56(c).  Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine issue as to any material fact." *Id.* When applying this standard, the Court examines the record and reasonable inferences in the light most favorable to the non-moving party.  *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F. 3d 1321, 1326 (10th Cir. 1999).

## III. Analysis

8.      The Defendants assert that they are entitled to summary judgment based on qualified immunity. Under the doctrine of qualified immunity, governmental officials performing discretionary functions generally are shielded from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U. S. 800, 818 (1982)*; see also Tonkovich v. Kansas Bd. of Regents*, 159 F. 3d 504, 515 (10th Cir. 1998). In evaluating a claim of qualified immunity, the first question is whether the plaintiff has asserted a violation of a constitutional or statutory right. *See Garramone v. Romo*, 94 F. 3d 1446, 1449 (10th Cir. 1996). If the plaintiff has asserted a violation of a constitutional or statutory right, then the question becomes whether that right was clearly established such that a reasonable person in the

defendant's position would have known that his conduct violated the right. *See id.*, 94 F. 3d at 1449 (*citing Siegert v. Gilley*, 500 U. S. 226, 231 (1991)).

9. Summary judgment motions involving a qualified immunity defense are determined somewhat differently than other summary judgment motions. *See Romero v. Fay*, 45 F. 3d 1472, 1475 (10th Cir. 1995). When a defendant raises qualified immunity on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test. *Nelson v. McMullen*, 207 F. 3d 1202, 1206 (10th Cir. 2000). First, the plaintiff must demonstrate that the defendant actions violated a constitutional or statutory right. *See Wilson v. Layne*, 526 U. S. 603, 609 (1999). Second, the plaintiff must show that the constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue. *See id.*; *Albright v. Rodriguez*, 51 F. 3d 1531, 1534-35 (10th Cir. 1995) "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Oliver v. Woods*, 209 F. 3d 1179, 1185 (10th Cir. 2000). If, and only if, the plaintiff establishes both elements of the test does a defendant then bear the traditional burden of showing "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Albright*, 51 F. 3d at 1535.

10. There are two remaining claims within the Plaintiff's complaint at issue with respect to the Defendants' Motion for Summary Judgment on Qualified Immunity. The first claim states that "[t]he act of beating the plaintiff while completely restrained and compliant constitutes excessive use of force, actionable under 42 U.S.C. § 1983." (Pl. Compl. at 3). The Plaintiff's

second claim states "[t]he act of beating the plaintiff while completely restrained and compliant violated the plaintiff's right to be free from unreasonable search and seizure." (Pl. Compl. at 3).

      11.     The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. Amend. IV. Included in the protection afforded individuals under the Fourth Amendment is the right to be free from arrest without probable cause, *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), as well as from government officials' use of excessive force during the course of an arrest. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

      12.     The Defendants argue they are entitled to qualified immunity on the Plaintiff's unreasonable search and seizure claim because they had probable cause to arrest Hanrahan. "Probable cause to arrest exists when officers have knowledge of facts that would warrant a person of reasonable caution in the belief that an offense has been or is being committed." *United States v. Bruce*, 78 F.3d 1506,1508 (10th Cir. 1996). In support of this argument, Defendants refer to the circumstances surrounding the initial encounter at the Smith's store as well as the ensuing pursuit that followed. (Defs.' Mem. Brief at 9-10). Indeed, the Plaintiff does not challenge the legality of the arrest. He even concedes that he shoplifted items from Smith's Food Store, pointed a gun at the security guard, and alluded the police after he fled the store. (Pl. Brief at 2). In essence, the Plaintiff is challenging the manner in which the Officers placed him in custody, not whether they had probable cause to do so. Because the Plaintiff does not argue

whether the Officers had the right to seize his person, the ultimate question in this case is whether the force used to place Hanrahan under arrest comported with the strictures of the Fourth Amendment.

      13.    In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *See Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692 (1979) ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged"). In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard. *See Tennessee v. Garner*, 471 U.S. 1, 7-22, 105 S.Ct. 1694, 1699-1707 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard); *see also Whitley v. Albers*, 475 U.S. 312, 318-326, 106 S.Ct. 1078, 1083-1088 (1986) (claim of excessive force to subdue convicted prisoner analyzed under an Eighth Amendment standard). Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons ... against unreasonable ... seizures" of the person. Interpreting Plaintiff's complaint

liberally, the Court assesses both the Plaintiff's excessive force claim and his unreasonable search and seizure claim pursuant to the same Fourth Amendment analysis.

14.     After Defendants raised qualified immunity on summary judgment, the burden shifts to the Plaintiff to demonstrate both that he has alleged the deprivation of an actual constitutional right and that the constitutional right in question was clearly established at the time. *See Wilson*, 526 U.S. at 609; *see also Albright*, 51 F. 3d at 1534-35.  First, the Plaintiff has alleged deprivation of his Fourth Amendment right to be free from unreasonable searches and seizures, including excessive force while being detained by police officials. (Compl. at 3). And second, the Plaintiff had a constitutional right under the Fourth Amendment not to be subjected to excessive force during the scope of an arrest.  *See Garner*, 471 U.S. at 7-22. Since the Plaintiff has adequately alleged the deprivation of an actual constitutional right, he has satisfied the first half of his burden.  The second aspect of Plaintiff's burden is whether that right was clearly established at the time of the incident.  In February, 1997, the law was clearly established that excessive force used to effect an arrest is in violation of the Fourth Amendment. *See Garner*, 471 U.S. at 7-22. . Therefore, since the Plaintiff has sufficiently carried his burden, the Defendants now bear the traditional burden of showing that there are no genuine issues of material fact in order to be entitled to judgment as a matter of law.  *See Albright*, 51 F. 3d at 1535.

15.     Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *See Graham*, 490 U.S. at 395. In *Graham*, the Supreme Court held that all excessive force claims should be analyzed under the reasonableness standard of the Fourth Amendment. *Id*. at 394. The reasonableness inquiry is an objective one and heavily fact dependent

requiring an inquiry into the factual circumstances of every case. *Id.*[1] Moreover, reasonableness of the use of force is viewed from the perspective of a reasonable officer on the scene and includes an allowance for the fact that officers are forced to make split second judgments in tense, uncertain, and rapidly changing situations. *Id.* The factors employed to determine reasonableness are the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer, and whether the subject is resisting arrest. *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir.1995) (citing *Graham*, 490 U.S. at 396).

      16.     After reviewing the *Martinez* report, I find there is a genuine issue of fact, raised by the evidence in the *Martinez* report, as to the nature of Hanrahan's arrest on February 15, 1997. In reviewing excessive force claims, the courts acknowledge that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal citations and quotation marks omitted). In making an arrest, officers may "use some degree of physical coercion or threat thereof to effect it." *Id.* For example, in order to position an arrestee for a pat down search for weapons, officers frequently use a reasonable amount of force. *See Dixon v. Richer*, 922 F.2d 1456, 1462 (10th Cir.1991) (noting that what the plaintiff characterized as a "kick" could be characterized as a "reasonable act" intended to prepare arrestee for a pat down).

---

[1] *See Mick v. Brewer*, 76 F.3d 1127 (10th Cir.1996) (upholding district court's denial of defendants' motion for summary judgment based on qualified immunity on the grounds that disputed issues of material fact precluded summary judgment); *see also Robbins v. Chronister*, 2000 WL 1389616 (D.Kan. 2000). (denied defendants' motion for summary judgment on the basis of qualified immunity under plaintiff's version of the facts in this case); *see also Kostrzewa v. City of Troy*, 247 F.3d 633 (6th Cir. 2001) (reversing district court's dismissal of plaintiff's §1983 claim in light of the fact that the plaintiff could have proven facts showing the unreasonableness of defendant's behavior.).

17. Viewing the record in the light most favorable to Mr. Hanrahan, there is evidence which supports his claim of excessive force. In particular, I find the pictures taken of him after he was placed under arrest which show the bloodied cuts and bruises on Hanrahan's face and the medical reports stating that he was brought by the police to the hospital because he was refused admission at the jail raise a genuine issue of material fact. This evidence supports claims made by Plaintiff within his complaint and his response to the motion for summary judgment. Plaintiff claims that he fully complied with the officers' request to get out of the car; that he did not resist nor kick the officers; that he did not have a jacket; and that his bruises and cuts were so bad that the jail official refused to take responsibility and that he instructed the police to take him to the hospital. (Pl. Brief at 2-3). The Defendants' argue that Hanrahan was holding a jacket with a firearm inside when he attempted to flee. (Def. Brief at 13). They assert that in the process of placing him in an arm bar and leg restraints, he suffered cuts and abrasions. *Id.* They also assert that Hanrahan was resisting and kicking the officers as they were trying to restrain him. *Id.*

18. Cases involving intensely factual inquiries are often not amenable to resolution by summary judgment. *See Graham*, 490 U.S. at 395; *see also Zuchel v. Spinharney*, 890 F.2d 273 (10th Cir.1989). The reasonableness of an officer's behavior is highly dependent on the facts. *See Graham*, 490 U.S. at 395. As it now stands, the issue before the court is purely factual. The factors posed in *Wilson* are highly contingent on which party is telling the truth. Whether Hanrahan posed a threat to the officers and whether he was resisting arrest are both contested issues. The record contains insufficient evidence to determine whether the force used to invoke Hanrahan's arrest was reasonable under the circumstances. Therefore, I recommend the

motion for summary judgment based on qualified immunity should be denied. *See Foote v. Speigel*, 118 F. 3d 1416, 1423 (10th Cir.1997).

19.  The Defendants argue that this case is similar to *Latta v. Keryte*, 118 F.3d 693 (10th Cir. 1997) and should be decided accordingly. In *Latta*, the Tenth Circuit upheld the district court's grant of defendant's motion for summary judgment in which excessive force was an issue. The court held that the officer's use of force during the pursuit, shooting at the tires of the defendant's car, was not unreasonable given the need presented, the possibility of an intoxicated driver. *Latta*, 118 F.3d at 702. Although the court found the officer's conduct reasonable under the circumstances, the *Latta* case is distinguishable from this case for two reasons. First, the force exercised in that case was used during the actual pursuit. The officers used necessary force to stop the defendant who was feared to have been intoxicated. And second, the extent of the defendant's injury was minimal and the defendant admitted to having no physical injuries from the officer's force. *Id*. The facts in this case revolve around the force used as the officers were physically detaining Hanrahan. Therefore, I recommend finding that the Defendants have failed to satisfy their burden of proving that there are no genuine issues of material fact in order to be entitled to judgment as a matter of law. *See Albright*, 51 F. 3d at 1535.

20.  The Defendants raise, within their reply, that the Plaintiff did not comply with FED. RULE OF CIV. PRO. 56(e). Specifically, they contend that the Plaintiff may not rest his argument on mere allegations or denials but must support his argument with affidavits. Because the Plaintiff is *pro se,* the Court reads the Plaintiff's response as if it did comply with Rule 56(e). If the district court adopts my proposed findings and recommended disposition, I will recommend to the

District Judge to require Mr. Hanrahan and/or his attorney to fully comply with Rule 56(e) in the order adopting my recommended disposition.

### **Recommended Disposition**

I recommend denying the Defendants' Motion for Summary Judgment (*Doc. 44*), filed January 11, 2001. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**